771 So.2d 410 (2000)
Phadalia S. JOSEPH, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Great Southern National Bank, Appellees.
No. 1999-CC-01634-COA.
Court of Appeals of Mississippi.
November 14, 2000.
*411 Len Melvin, Attorney for Appellant.
Mark D. Ray, John Wesley Garrett Jr., Clinton, Attorneys for Appellees.
BEFORE SOUTHWICK, P.J., BRIDGES, IRVING, AND MYERS, JJ.
BRIDGES, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Phadalia "Sheila" Joseph was fired from her job as a teller at the Great Southern National Bank (GSNB) on February 12, 1999, due to a shortage in her cash drawer the week before. Joseph applied for unemployment benefits and was denied these benefits by the claims examiner of the Mississippi Employment Security Commission (MESC). Joseph filed a notice of appeal and a hearing was held before a referee of the MESC on April 1, 1999. The referee ruled that Joseph was entitled to benefits as her conduct did not rise to the level of "misconduct."
¶ 2. The bank appealed to the Board of Review of the MESC following the referee's decision. The Board of Review reversed the referee's ruling and reinstated the finding of the claims examiner that Joseph should be denied unemployment benefits. On May 19, 1999, Joseph filed a petition for appeal and review with the Circuit Court of Forrest County. The circuit court affirmed the findings of the Board of Review in denying Joseph benefits.
¶ 3. Joseph filed her appeal with the Mississippi Supreme Court on October 1, 1999, seeking benefits that she claims were wrongfully denied her by the MESC. The Appellees have not filed a brief with this Court in response to Joseph's appeal.

STANDARD OF REVIEW
¶ 4. The standard of review to be used when reviewing a trial court decision either affirming or denying an administrative agency's findings and decisions is an abuse of discretion standard. Our standard for reviewing the findings and decisions of an administrative agency such as the MESC is found in Miss.Code Ann. § 71-5-531 (Supp.1999). "In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Id.
¶ 5. Apart from the statute, this Court has spoken to the standard of review of MESC proceedings: "The denial of benefits may be disturbed only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights." Mississippi Employment Sec. Comm'n v. Noel, 712 So.2d 728, 730 (Miss.Ct.App.1998)(citing Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, *412 1215 (Miss.1993)). The MESC's decision is rebuttably presumed to be correct. Id.
¶ 6. Under Mississippi's unemployment compensation law, a person is disqualified from receiving benefits if he is discharged from employment for misconduct connected with his work. Miss.Code Ann. § 71-5-513(A)(1)(b) (Rev. 1995). The burden of proving misconduct by substantial clear and convincing evidence rests with the employer. Sprouse v. Mississippi Employment Sec. Comm'n, 639 So.2d 901 (Miss. 1994).
¶ 7. This Court must also look, in this case, to how we must approach a matter in which we have heard no argument from the appellee(s) either through a timely and properly filed brief or through oral argument. This Court has no obligation to look to the record to form an opinion against the appellant where the appellee has filed no such brief outlining his opposing position. Selman v. Selman, 722 So.2d 547, 551 (Miss.1998); Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 717 (Miss.1984); W.T. Raleigh Co. v. Armstrong, 165 Miss. 380, 140 So. 527 (1932); N.E. and R.H. v. L.H., Jr., L.H. and L.T., 761 So.2d 956 (¶ 14)(Miss.Ct.App.2000). Rather, the failure of the appellee to file a brief with this Court may be "tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error." Dethlefs, 458 So.2d at 717.

FACTS
¶ 8. Joseph was fired from her job with GSNB as a teller due to a two thousand dollar shortage from her bank drawer. Joseph applied for unemployment benefits with the MESC following her termination. At the initial hearing before the MESC, a representative of GSNB gave testimony that Joseph had worked for over two years with GSNB and that, in that time, she had been over or under on her drawer balances by one hundred dollars or less on four to five other occasions. However, this testimony for the bank later indicated that Joseph was terminated only for the two thousand dollar error that is at issue here, not for any of the other occasions mentioned. Joseph had been given raises throughout her employment with GSNB, and she had been an employee that regularly reported to work on time, had not previously been written up for misconduct and had a pleasant working relationship with her co-workers at GSNB.
¶ 9. Following this incident, Joseph was not accused of stealing the missing money nor were the police asked to become involved in an investigation of this event. Rather, this miscalculation was considered by GSNB to be an honest mistake on Joseph's part. Furthermore, Joseph was not fired for dishonesty, but rather for negligent actions consistent with an alleged policy of the bank that tellers would be automatically terminated following any occurrence of a teller's drawer being out of balance by more than one thousand dollars. The bank policy, however, does not articulate that this type of error shall be termed "misconduct" as it is defined in the legal sense. In fact, in GSNB's letter to the MESC requesting an appeal and rehearing of the matter after the decision in favor of Joseph, it is worth noting that the bank representatives admit that Joseph's conduct was a simple case of negligence rather than misconduct. Moreover, it appears from the testimony at the hearings that the parties are in dispute as to whether or not Joseph or other tellers employed with GSNB were aware of this policy, and if so, whether they were aware of the one thousand dollar limit and the consequences of losing their jobs in the event of a mistake in their balances over this amount.

LEGAL ANALYSIS
¶ 10. A crucial point in our review of this matter that may not simply be ignored is the fact that the Appellees in this case have failed to file a brief with this Court which allows us to properly take their arguments into consideration. In the *413 case of W.T. Raleigh Co. v. Armstrong, the Supreme Court of Mississippi found themselves faced with the same dilemma. W.T. Raleigh Co., 140 So. at 527. The court in that case recognized that there is no uniform rule of procedure as to a reviewing court's duty in such a situation where they are not provided with a brief of the appellee's argument. Id. Specifically, the court stated:
Some [courts] hold that such default on appellee's part will be taken as a confession of the errors assigned and of the statement of facts, and citations of law, in appellant's brief and argument, and the judgment will thereupon be reversed as a matter of course. Other courts have said that they will to an extent disregard the default of the appellee and will determine the case on the merits; but even those courts have generally said that they will not devote any extended or laborious efforts to search out from the record the facts or the theories upon which an affirmance may be based, and have called attention to the liability to error, and to the danger of bringing forward and in acting upon points or theories that were not presented or passed upon in the trial court. And sometimes the obvious point has been made that an appellee has no right to call upon the court to brief his case for him, for this would be to call upon the court to act first as attorneys for appellee, and, when that function has been performed, then as judges to decide the case.
Id. Furthermore, the court went on to conclude:
We shall, in this court, at our discretion, on default of appellee, take one or the other of the following two courses: (1) When the record is complicated or of large volume, and the case has been thoroughly briefed by appellant with a clear statement of the facts, and with apt and applicable citations of authorities, so that the brief makes out an apparent case of error, we will not regard ourselves as obliged to look to the record or to search through it to find something by which to avoid the force of appellant's presentation, but will accept appellant's brief as confessed and will reverse. Or (2) when the record is in such condition that we can conveniently examine it, and when upon such an examination we can readily perceive a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we will take that course and affirm, thereby to that extent disregarding the default of appellee. But when, taking into view the argument presented by appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirmance, the judgment will be reversed without prejudice.
Id. at 527-28.
¶ 11. It is our opinion that the case at bar falls within the last sentence of the above excerpt. We may not proceed with entire confidence to affirm this case, as we are convinced that the argument presented by Joseph may be adequately supported by the facts in the record. Therefore, we follow the ideology of previous Mississippi Supreme Court decisions and past decisions of this Court by holding that the Appellees' negligence in presenting this Court with a brief outlining their position warrants a more deferential emphasis on Joseph's argument. Selman, 722 So.2d at 551; Dethlefs, 458 So.2d at 717; N.E. and R.H., 761 So.2d at 962 (¶ 14). Furthermore, while we note that "automatic reversal is not required" in such cases, Joseph's contentions spawn a sufficient amount of doubt in our minds about the decisions of the Commission and trial court to deny benefits to Joseph. Selman, 722 So.2d at 551. As such, we proceed with a brief discussion of the merits of this case.
¶ 12. Our standard of review when determining the outcome of this case is to determine whether the Commission's decision *414 to deny unemployment benefits to Joseph was supported by substantial evidence. We believe that it was not. We look to the case of Mississippi Employment Security Commission v. Jones, 755 So.2d 1259 (¶ 10)(Miss.Ct.App.2000), which this Court decided very recently regarding employee misconduct. The facts in Jones are considerably similar to our facts in the instant case. Id. at (¶ 2). Ms. Jones, the appellant, was seeking unemployment benefits after being terminated from her job at a truck stop as a cashier. Id. Like Joseph, she was fired because of shortages in her cash drawer. Id. As must be the case in the matter before us, our decision in Jones rested on whether these shortages constituted "misconduct." Id. at (¶ 10).
¶ 13. In Jones, we found that in order to deny unemployment benefits to a terminated employee for misconduct, the employee's actions must encompass a "wanton disregard of the employer's legitimate interests." Id. It is our opinion that Joseph did not possess such disregard for GSNB's business interests. It is admitted in the testimony of the bank representative at trial that Joseph was never accused of stealing the money from her cash drawer. Furthermore, the bank representative stated that it is common for tellers at the bank to sometimes be out of balance at the end of the work day. We find this to be a case of mere negligence on the part of Joseph, coupled with the confusion that generated from having someone else correct the balance at her station without her presence. As such, we are mindful of our finding in Jones that "ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered `misconduct' within the meaning of the statute." Id.; Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). We are of the opinion that Joseph's error was a good faith error and that such large errors as the one at issue had not occurred previously during Joseph's employment. We further found in Jones that negligence such as this does not rise to the level of misconduct which would prevent the employee from receiving unemployment benefits. Jones, 755 So.2d at 1262 (¶ 12). In Jones, we further held that there was "no evidence and certainly no finding relied upon by the agency that Jones was herself pocketing the missing funds." Id. We believe that to be the case in our instant matter as well.
¶ 14. Moreover, because the Appellees failed to file a brief, it cannot be said that the Appellees met their burden of showing by "substantial, clear and convincing evidence that [Joseph's] conduct warranted disqualification from benefits." Id. at (¶ 8). We will not engage in speculation as to what arguments the Appellees would attempt to make if, in fact, they had submitted their position to this Court. As such, we have given broad deference to the argument of Joseph, and it is our opinion that Joseph should not have been denied benefits because the Commission's apparent conclusion that her actions did rise to the level of misconduct is not, in our opinion, supported by substantial evidence.
¶ 15. For the foregoing reasons, we reverse and render the decisions of the MESC and the Circuit Court of Forrest County on the merits of this case. Further, as we have already established that the Commission's case fails on the facts of this matter, we order that this case be remanded to the Commission only for the purpose of conducting a hearing to establish the amount of compensation to be awarded to Joseph.
¶ 16. THE JUDGMENTS OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION AND THE CIRCUIT COURT OF FORREST COUNTY DENYING UNEMPLOYMENT BENEFITS TO THE APPELLANT ARE HEREBY REVERSED AND RENDERED AND REMANDED TO THE COMMISSION ONLY FOR THE PURPOSE OF CONDUCTING A HEARING TO DETERMINE THE AMOUNT OF COMPENSATION TO BE AWARDED *415 TO THE APPELLANT. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.