825 So.2d 721 (2002)
Susan K. PAGE, Appellant,
v.
ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS and Schnadig Corporation, Inc., Appellees.
No. 2001-WC-01720-COA.
Court of Appeals of Mississippi.
September 10, 2002.
*722 Phillip M. Whitehead, Booneville, attorney for appellant.
Alan C. Goodman, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY AND FACTS
¶ 1. This is a workers' compensation case. The appellant, Susan Page, worked as an upholsterer for Schnadig Corporation, which is insured by co-appellee Zurich American Insurance Company. Page was diagnosed with carpel tunnel syndrome and fibromyalgia in 1998, and her doctor recommended she be assigned to a less physical job in light of the pain she suffered due to her injuries. Unable to meet the production requirements of her job, Page's employment was terminated.
¶ 2. Page filed her petition to controvert in January 1999. The administrative law judge found that Page had sustained a compensable injury and was totally disabled both due to her physical injuries and due to the resulting mental and emotional distress. The Full Commission affirmed the administrative law judge concerning the physical injuries, but overturned the decision concerning the mental injury, finding that a sufficient causal connection did not exist between Page's work and her disabled mental condition. The Tishomingo County Circuit Court affirmed the Full Commission, and Page now appeals to this Court arguing that the Full Commission's denial of compensability for her mental injury was clearly erroneous and contrary *723 to the overwhelming weight of the evidence. We find no error with the decision of the Full Commission; thus, we affirm.

DISCUSSION OF THE ISSUES

I. WAS THE DECISION OF THE FULL COMMISSION CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 3. Page argues that the circuit court erred in affirming the Full Commission's reversal of compensation for her mental injury claim. We initially look to our standard of review in a workers' compensation case.
Our standard of review in workers' compensation cases is well established. The Full Commission acts as "ultimate finder of fact," and as such "its findings are subject to normal, deferential standards upon review."
We are to presume that the Commission made proper determinations as to which evidence was credible, had weight, and which was not. Findings of fact made by the Full Commission are binding on this Court provided they are "supported by substantial evidence." We will only reverse the Commission's decision when the decision is erroneous and contrary to the weight of the evidence. Under the substantial evidence rule, we are further bound from rendering a different decision than that reached by the Full Commission even though the evidence presented may lead us to conclude otherwise had we been sitting as the ultimate finder of fact. "Substantial evidence, though not easily defined, means something more than just a `mere scintilla' of evidence, [yet] it does not rise to the level of a `preponderance of the evidence.'" Substantial evidence can further be said to be evidence "affording a substantial basis of fact from which the fact in issue can be reasonably inferred." We apply the de novo standard of review to matters of law. This Court is reminded that workers' compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficial purposes of the act may be accomplished.
Attala County Nursing Ctr. v. Moore, 760 So.2d 784 (¶¶ 7-8) (Miss.Ct.App.2000) (citations omitted). Next, we look to the evidence which was before the Full Commission.
¶ 4. Page began working at Schnadig in October 1992. In 1998 she was diagnosed with fibromyalgia and soon after complained of carpal tunnel syndrome for which she eventually had surgery. Her production at work began to suffer, and her doctor recommended she be assigned to less strenuous work. Her employer would not accommodate this request, opting instead to put her on six weeks of medical leave. When she returned to work, she was told her production which had been as low as fifty percent needed to increase to eighty-five percent. When she could not meet the demands, she was terminated in September 1998 for reasons she claims were related to her injury. Lannie Cox testified for Schnadig that Page was deficient in her production and that he was aware of her physical injuries. However, he claims he never ridiculed Page, though she claims such ridicule led to her mental distress. Cox points out, to the contrary, that he was encouraging and always asked if he could help Page in any way to improve her production. Mellonie Davis from Schnadig's personnel department also testified that Page never complained that her work was causing any mental or emotional harm. Davis explained that Schnadig did not have a specific light duty work program to accommodate Page's physical condition.
*724 ¶ 5. Page's history of mental distress dates back to 1991, which is six years prior to her work-related physical injury. Her medical records show that during this time she was suffering from symptoms of depression and anxiety attributable to stress at work and home, and in 1993, her mental stress was heightened due to marital difficulties. Page was treated from that time through 1997 for these symptoms, with the Full Commission noting that a history of "familial or financial difficulties was documented as the culprit." Psychiatrist Dr. Clyde Sheehan recorded in his records that when he initially saw Page in September 1998, she told him that work-related problems had led to her physical problems, plus Dr. Sheehan noted Page's history of mental illness and treatment relating back a few years. Although Dr. Sheehan initially found that Page's depressive mode was caused by her inability to perform her job satisfactorily, the following months he noted Page's added mental stress was related to several other factors including a recent death in the family, her worry about being able to pay bills, familial difficulties, stressed relations with her husband, caring for a child with attention deficit disorder, and financial concerns. By December 1999, Dr. Sheehan conveyed that, from a mental health perspective, Page was still six months removed from being able to return to employment. Dr. Sheehan also conveyed that Page was a vulnerable person whose physical injuries, coupled with the consequent loss of income and confidence, pushed her over the edge and into a disabled state. However, for several months Page had not mentioned to Dr. Sheehan that her former employment with Schnadig was a source of her stress, but rather cited stressful situations in her home life. Based on all of this testimony, the Full Commission resolved this difficult case by finding insufficient evidence was presented to prove a causal connection between Page's work and her mental injuries, namely in light of Page's long history of battling mental depression.
¶ 6. As the Full Commission found, to recover benefits for her disabling mental injury, Page must prove by clear and convincing evidence that her injury was either caused, contributed to or aggravated by something other than the ordinary incidents of her employment, or that her disabling mental injury was caused, contributed to or aggravated by a work related physical injury. See Miss.Code Ann. § 71-3-3(b) (Supp.2001). Applying this standard, the Full Commission was unable to find clear and convincing evidence in support of a causal connection between Page's mental injury and her employment. Reviewing the evidence before the Commission, we find substantial evidence existed to support the Commission's findings of fact, and the decision of the Commission was not contrary to the weight of the evidence. Consequently, we affirm.
¶ 7. THE JUDGMENT OF THE TISHOMINGO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.