767 So.2d 1029 (2000)
Lisa LEWIS, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellee.
No. 1999-CC-00427-COA.
Court of Appeals of Mississippi.
July 18, 2000.
Rehearing Denied September 26, 2000.
Lisa Lewis, Appellant, pro se.
John W. Garrett, Jr., Clinton, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. Lisa Lewis filed this appeal from an adverse decision handed down in the Winston County Circuit Court denying her claim to weekly unemployment benefits during a two week span in the summer of 1998. Lewis, appearing pro se in this action, alleges that the circuit court erred in affirming the Mississippi Employment Security Commission Board of Review's decision regarding her claim. Specifically, Lewis asks this Court to consider the following:

WHETHER THE CIRCUIT COURT ERRED IN NOT REVERSING THE BOARD OF REVIEW BECAUSE THEIR DECISION WAS ARBITRARY AND CAPRICIOUS, UNSUPPORTED BY SUBSTANTIAL EVIDENCE, BEYOND THE SCOPE OF THE POWER OF THE AGENCY AND VIOLATED CLAIMANT'S CONSTITUTIONAL RIGHTS.
¶ 2. A thorough review of the record reveals no such error occurred at the circuit court level.

FACTS
¶ 3. Lisa Lewis filed an initial claim in the Philadelphia office of unemployment *1030 benefits on March 1, 1998. Claims were filed and received in a timely manner for several months. On July 29, 1998, a claims examiner denied the continued claim for the weeks ending July 4, 1998, and July 11, 1998, on the ground that the claims were not filed in a timely manner in accordance with MESC Unemployment Insurance Regulation BR-2(c)(2). Section 71-5-511(a)(i) of the Mississippi Code provides eligibility requirements for claimants and allows the MESC to enact further regulations like BR-2(c)(2) regarding filing claims. Miss.Code Ann. § 71-5-511(a)(i) (Rev.1995). The claims examiner based his decision, in part, on Lewis's failure to appear at several meetings regarding her eligibility status.
¶ 4. On July 8, 1998, Lewis failed to appear at a meeting in the Meridian claims office for an eligibility review. Lewis sent a note to the office explaining that she would be unavailable for the meeting due to transportation problems. She also indicated that she had an interview in St. Louis, Missouri on July 10, 1998, which she attended with the help of a rental car provided by her brother.
¶ 5. Lewis was sent another "call-in notice" for 10:00 a.m. on July 15, 1998. She again failed to appear at the claims office as directed, but sent her continuing claim forms to the office. Several attempts to reach Lewis by telephone were unsuccessful because her service had been recently disconnected. Lewis reported, in person, to the claims office unexpectedly on July 24, 1998, to file her continuing claim for the weeks ending July 11 and July 18, 1998.
¶ 6. Lewis appealed the July 29th decision by the claims examiner on August 12, 1998, and a hearing date was set for September 4, 1998, to determine whether the continued claims were properly filed for the weeks in question. At the hearing, the MESC referee questioned Lewis about the circumstances surrounding her absences at the required eligibility reviews and her understanding of the filing procedures and time deadlines necessary for her meet to secure her continuing claims of unemployment. Lewis admitted that she was familiar with the filing procedures and deadlines. After questioning Lewis, the MESC referee affirmed the decision of the claims examiner.
¶ 7. Lewis then appealed her case to the Circuit Court of Winston County. After the Commission filed its answer and record from proceedings below, the Honorable Clarence E. Morgan affirmed the Board of Review decision, stating that their decision was supported by "substantial evidence, is not arbitrary and capricious, is not beyond the scope of the power granted to the agency, and does not violate the constitutional rights" of Lewis.

STANDARD OF REVIEW
¶ 8. Section 71-5-531 of the Mississippi Code clearly delineates the scope of judicial review of board of review findings. Section 71-5-531 reads in pertinent part: "In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Miss.Code Ann. § 71-5-531 (Rev.1995).
¶ 9. The Mississippi Supreme Court recently explained this standard of review in Allen v. Mississippi Employment Security Commission, saying:
This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights. A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Lastly, this Court must not reweigh the facts of the case or *1031 insert its judgment for that of the agency.
Allen v. Mississippi Employ. Sec. Comm'n, 639 So.2d 904, 906 (Miss.1994).

LEGAL ANALYSIS
¶ 10. The applicable standard of review is a rigorous one and requires appellate courts to affirm the decision of the circuit court where there is substantial evidence supporting the finding of facts and opinions and where application of the law to that set of facts is neither arbitrary nor capricious. The record in this case clearly exhibits substantial evidence that Lewis failed to properly file continued claim forms for the weeks in question. She admitted she knew of the regulations and procedures, but simply failed to follow them for a variety of reasons. While this Court may disagree as to whether those reasons justified failure to comply with said regulations, no evidence has been presented that denial of those claims was arbitrary or capricious. It is certainly within the province of the MESC to hold hearings and deny claims. Lewis was given the benefit of several meetings and hearings and now a fourth appeal to state her case for the denied benefits. Given this set of facts, this Court sees no rhyme nor reason to reverse the circuit court decision.
¶ 11. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT IS AFFIRMED.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.
PAYNE, J., DISSENTING:
¶ 12. I must dissent. The application of the law in this case is both arbitrary and capricious. The claimant had no transportation to get to Meridian and had her phone disconnected because she could not pay the bill. It is obvious that by using the mail she attempted to substantially conform to the law. She was actively pursuing employment even out of state.
¶ 13. Sometimes it seems that the letter of the law is observed over the spirit. But we need to review the letter of the unemployment compensation law as stated in the legislative policy statement:
As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread to lighten its burden, which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.
Miss.Code Ann. § 71-5-3 (1972).
¶ 14. I would reverse and remand for payments.